```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                         DALLAS DIVISION
```

DAN R. WALLER, as Receiver for   §
Dobbins Capital Corp.,           §
Dobbins Offshore Capital, LLC,   §
Dobbins Partners, L.P., and      §
Dobbins Offshore, Ltd.,          §
                                 §
                    Plaintiff,   §  Civil Action No. 3:06-CV-0506-D
                                 §
VS.                              §
                                 §
GEORGE ROBERT PIDGEON, SR.,      §
                                 §
                    Defendant.   §

## MEMORANDUM OPINION

In this case tried by agreement on stipulated facts and written briefs, the parties agree that the dispositive question presented is one of law: whether the definition of insolvency under § 24.003 of the Texas Business and Commerce Code, a provision of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq*. (Vernon 2002), requires that a debtor's debts be valued at book value. Concluding that it does not, the court enters judgment for defendant.[1]

                                I

This is an action by plaintiff Dan R. Waller ("Waller"), receiver for Dobbins Capital Corp. ("Dobbins Capital"), Dobbins Offshore Capital, LLC ("Dobbins Offshore Capital"), Dobbins Partners, L.P. ("Dobbins Partners"), and Dobbins Offshore, Ltd.

---

[1]The court sets forth in this memorandum opinion its conclusions of law. *See* Fed. R. Civ. P. 52(a). The controlling facts are stipulated.

("Dobbins Offshore"), against defendant George Robert Pidgeon, Sr. ("Pidgeon"). Waller alleges that Pidgeon received a fraudulent transfer of funds from Dobbins Partners in the form of a $650,000 redemption payment, and he seeks to recover this payment from Pidgeon.

The parties have stipulated to the following relevant facts. Robert Dobbins ("Dobbins") operated two related hedge funds: Dobbins Partners and Dobbins Offshore. Dobbins Capital was the general partner and investment advisor to Dobbins Partners. Dobbins Offshore Capital was the investment advisor to Dobbins Offshore. Waller is the receiver for Dobbins Capital, Dobbins Offshore Capital, Dobbins Partners, and Dobbins Offshore pursuant to the final judgment in *SEC v. Dobbins,* 2004 WL 957715 (N.D. Tex. 2004) (Sanders, J.). Pidgeon, a Dobbins Partners limited partner, invested a total of $4 million in Dobbins Partners over the course of four contributions made between April 1995 and April 1997. Beginning in 1998 and continuing until 2002, Pidgeon made several withdrawals from his capital account, receiving a total of $4,950,000 in redemption payments. Pidgeon received his last redemption payment on December 27, 2002, in the sum of $650,000. On the same day, George Huber ("Huber"), another Dobbins Partners limited partner, loaned $2,060,000 to Dobbins Partners. Dobbins Partners used the proceeds from this loan to make two redemption payments to limited partners, including the $650,000 payment to

Pidgeon.

Waller, as Receiver for Dobbins Offshore, a creditor of Dobbins Partners, sues Pidgeon, alleging that, as early as September 30, 2002, Dobbins Partners was insolvent, and that Dobbins fraudulently overstated the value of Dobbins Partners' assets to attract new investors and induce existing investors to invest more capital. As a result of the alleged fraudulent valuations, the capital accounts of Dobbins Partners' limited partners were overstated. Waller alleges that Dobbins Partners was insolvent at the time of the $650,000 redemption payment to Pidgeon and that the actual value of Pidgeon's capital account was zero or negative.

II

A

The parties agree that the court will decide this case solely on the basis of Waller's fraudulent transfer claim under TUFTA § 24.006(a),[2] which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at

---

[2] Although § 24.006(a) is technically a provision of the Texas Business and Commerce Code, for ease of reference, the court will refer throughout this memorandum opinion to sections of the Code as sections of TUFTA.

- 3 -

> that time or the debtor became insolvent as a
> result of the transfer or obligation.

Therefore, under § 24.006(a), a transfer is fraudulent as to a creditor if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer, *and* the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

The parties also agree that the sole contested issue in this bench trial is whether Dobbins Partners was insolvent at the time it made the redemption payment to Pidgeon. Under TUFTA, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." TUFTA § 24.003(a). TUFTA § 24.003(c) defines insolvency for a partnership, as follows:

> A partnership is insolvent under Subsection
> (a) of this section if the sum of the
> partnership's debts is greater than the
> aggregate, at a fair valuation, of all of the
> partnership's assets and the sum of the excess
> of the value of each general partner's
> nonpartnership assets over the partner's
> nonpartnership debts.

*Id.*

The parties agree that the fair value of the assets of Dobbins Partners as of December 31, 2002 was $4,949,873.00. The parties also stipulate that, as of December 31, 2002, the book value of Dobbins Partners' liabilities was $8,897,483.00, consisting of the $2,060,000 loan from Huber, $15,111.00 owed to another limited

partner, and a liability of $6,822,372.00 owed to Dobbins Offshore. The debt to Dobbins Offshore arose from approximately 80 transactions over several years between Dobbins Partners and Dobbins Offshore involving the purchases of investment securities. The parties agree that Dobbins Partners and Dobbins Offshore are related parties. Waller contends that because the stipulated book value of Dobbins Partners' liabilities ($8,897,483.00) exceeded the stipulated fair value of its assets ($4,949,873.00), Dobbins Partners was insolvent when it made the $650,000 redemption payment to Pidgeon.

Pidgeon responds that the court should adjust liabilities to a fair valuation by deducting related-party transactions between Dobbins Partners and Dobbins Offshore, and he offers expert testimony that the fair value of the debt was $2,075,111.00. Pidgeon maintains that, under such a calculation, Dobbins Partners was solvent on the day of the $650,000 redemption payment, because its stipulated assets of $4,949,873.00 exceeded its indebtedness of $2,075,111.00.

Waller replies that, as a matter of law, § 24.003 requires that assets be valued at "a fair valuation," but debts must be valued according to their book value. Waller rebuts Pidgeon's valuation of Dobbins Partners' debts solely on the basis of his statutory interpretation argument; he does not otherwise contest Pidgeon's calculation of the adjusted debt amount of $2,075,111.00.

B

As noted, the parties agree that the dispositive question in this case turns on a legal interpretation of the meaning of TUFTA § 24.003(c): the "specific question of statutory interpretation is whether the court is permitted to adjust the liabilities of a partnership in determining if the partnership was solvent [or insolvent]." Feb. 1, 2008 Ltr. 2. Waller contends that "the statutory language mandates that assets are to be adjusted to fair value but that liabilities are to be accepted at book value." *Id.* If the court accepts this position, the parties agree that "Dobbins Partners was insolvent when it made the transfer to [Pidgeon] because the stipulated book value of Dobbins Partners' liabilities ($8,897,483) exceeded the stipulated fair value of its assets ($4,949,873)." *Id.*

Pidgeon maintains, however, that the court "should adjust liabilities to a fair valuation by deducting related-party transactions between Dobbins Partners and Dobbins Offshore." *Id.* If the court concurs with Pidgeon's argument, the parties agree that "Dobbins Partners was solvent because the stipulated fair value of its assets ($4,949,873) exceed[s] the stipulated fair value of its liabilities ($2,075,111)[.]" *Id.*

III

The court must apply Texas statutory interpretation principles to determine whether the TUFTA insolvency definition requires that

debts be valued at book value.  Under Texas law, "[t]he goal of statutory construction is to give effect to the intent of the legislature." *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993).  In applying this principle of statutory interpretation, a court

> must construe statutes as written and, if possible, ascertain legislative intent from the statute's language.  Even when a statute is not ambiguous on its face, [the court] can consider other factors to determine the Legislature's intent, including: the object sought to be obtained . . . the common law or former statutory provisions, including laws on the same or similar subjects; the consequences of a particular construction; administrative construction of the statute; and the title, preamble, and emergency provision.

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (citations omitted).

Waller raises several arguments in support of a reading of the solvency definition that requires that debts be valued at book value.  He first contends that, under a straightforward reading of the § 24.003(a) definition of solvency, the modifier "at a fair valuation" applies only to assets and not debts, presumably because the modifier directly follows the term "assets" in the sentence. Waller points out that the wording of § 24.003(c)—which applies to a partnership—even more clearly connects "at a fair valuation" to "assets" rather than to "debts."  As quoted more fully above, this section in part determines insolvency based on whether "the sum of the partnership's debts is greater than the aggregate, at a fair

valuation, of all of the partnership's assets." TUFTA § 24.003(c). Waller maintains that the modifier "fair valuation" clearly applies to "the partnership's assets" but not "the partnership's debts," and that debts are therefore to be valued according to their book value alone.

Waller also contends that courts interpret the similarly worded solvency definition of the Bankruptcy Code as requiring that debts be taken at book value. He points to out-of-circuit cases that hold that debts are not to be adjusted in determining insolvency. For example, in *In re Trans World Airlines, Inc.*, 134 F.3d 188 (3d Cir. 1998), the Third Circuit affirmed a bankruptcy court determination that a public debt should be taken at face value, not adjusted for market value. Waller also points to *In re Lids Corp.*, 281 B.R. 535 (Bankr. D. Del. 2002), in which the bankruptcy court cited *Trans World Airlines* to conclude that "[d]ebts are measured at face value because the language 'at a fair valuation' in section 101(32)(A) [of the Bankruptcy Code] applies only to the valuation of assets; it does not apply to valuation of debts." *Id.* at 545-46.[3]

Finally, Waller argues that applying the "fair valuation" standard to debts is inconsistent with the broad definition of "debt," as interpreted by several courts, which includes

---

[3]As the court explains *infra* at note 8, the court respectfully disagrees with *Lids Corp*.

- 8 -

liabilities in the definition of debt, even if they are "unliquidated," "contingent," "unmatured," or "disputed." *See, e.g., In re Commercial Fin. Servs. Inc.*, 350 B.R. 520, 535 (Bankr. N.D. Okla. 2005). Waller thus urges the court to hold, as a matter of law, that § 24.003 requires that debts be valued only at book value, and therefore that Dobbins Partners was insolvent at the time the redemption payment was made, because the book value of its debts indisputably exceeded the fair valuation of its assets.

IV

The court examines first the plain language of the relevant provisions of TUFTA. The court agrees that, in § 24.003(a) and (c), the proximity of the modifier "fair valuation" to the term "assets," and its distance from the term "debts," suggests that "fair valuation" applies to valuing assets but not debts. This plain reading does not, however, necessarily preclude *any* adjustment to the valuation of a debt in the insolvency calculation of § 24.003(a) or (c).[4] The court recognizes the term "fair valuation" is generally defined in connection with a calculation of assets. *See, e.g., In re Rajabali*, 365 B.R. 702, 710 (Bankr. S.D. Tex. 2007) ("a corporation may be deemed insolvent if the sum of

---

[4]Although § 24.003(c) is worded so that the "fair valuation" standard is more clearly connected to partnership assets than to debts than is the connection found in § 24.003(a), the court discerns no reason to conclude that the Texas Legislature intended to apply a different definition of insolvency to partnerships than would be applied to other debtors.

its debts exceeds the entity's property at fair valuation—that is the price obtainable in the market if the entity's assets were sold in a reasonably, prudent manner." (citation omitted)). But this does not of itself compel the conclusion that debts can *only* be valued at book value and are never subject to being adjusted. Interpreting the similarly worded provision of the Bankruptcy Code, the Fifth Circuit has articulated a test of insolvency in which both debts and property are determined under the "fair valuation" standard.[5]

> A corporate debtor is insolvent when its financial condition is such that the sum of its debts is greater than all of its property, at a fair valuation. Courts often refer to this test as a balance sheet test, and then engage in the "fair valuation" *of the debts and property* shown on the balance sheet, as required by the statute.

*In re Lamar Haddox Contractor, Inc.*, 40 F.3d 118, 121 (5th Cir. 1994) (internal quotation marks, ellipsis, brackets, and citation omitted; emphasis added) (quoting 11 U.S.C. § 101(32)(A)) (citing *In re Taxman Clothing Co.*, 905 F.22 166, 169-70 (7th Cir. 1990)).[6]

---

[5]In *In re Lamar Haddox Contractor, Inc.*, 40 F.3d 118 (5th Cir. 1994), the Fifth Circuit neither addressed the statutory interpretation question presented in this case nor considered in its analysis questions of debt valuation standards. Therefore, although the court considers the quoted language from *Lamar Haddox Contractor* to support the reasoning in today's opinion, it recognizes that the decision neither addresses the question presented nor is dispositive of the issue the court must decide.

[6]In *Lamar Haddox Contractor* the Fifth Circuit was addressing 11 U.S.C. § 101(32)(A), which applies to entities other than, *inter alia*, a partnership. *Lamar Haddox Contractor*, 40 F.3d at 121. But

Waller's position essentially requires the court to insert "book value" as a modifier of the term "debts" in the definition of insolvency under TUFTA § 24.003(a) and (c), because the term does not appear in either subsection. Waller maintains that because assets are to be valued at "a fair valuation," the requirement of valuation of debt at book value can be inferred from the absence of a parallel requirement that they be valued "at a fair valuation." This interpretation, however, is not what the plain reading of the statute commands. The term "book value" is simply not found in TUFTA § 24.003(a) or (c). Reading the "book value" standard into these statutory provisions runs counter, in fact, to the "general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent." *In re Huag*, 175 S.W.3d 449, 452 (Tex. App. 2005, no

---

11 U.S.C. § 101(32)(B), which applies to a partnership, similarly defines "insolvent" so that the modifier "a fair valuation" is closer to the asset side of the equation than to the debt side. Under § 101(32)(B)

> "insolvent" means— . . . with reference to a partnership, financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation—
> (i) all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and
> (ii) the sum of the excess of the value of each general partner's nonpartnership property, exclusive of property of the kind specified in subparagraph (A) of this paragraph, over such partner's nonpartnership debts[.]

pet.); see also *B.C. v. Rhodes*, 116 S.W.3d 878, 882 (Tex. App. 2003, no pet.) ("A court may not add words to a statute unless necessary to give effect to clear legislative intent.").

V

Moreover, determining the legislative intent of how debts are to be valued in an insolvency calculation involves more than interpreting the wording of § 24.003(a) and (c). As the Supreme Court of Texas has explained, "[e]ven when a statute is not ambiguous on its face," a court can determine legislative intent by considering factors such as "the common law or former statutory provisions, including laws on the same or similar subjects." *Helena Chem. Co.*, 47 S.W.3d at 493. In fulfilling this requirement, the court is guided by the directives found in TUFTA §§ 24.011 and 24.012.

Section 24.011 provides that "[u]nless displaced by the provisions of this chapter [i.e., TUFTA], the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, *insolvency,* or other validating or invalidating cause, supplement its provisions." TUFTA § 24.011 (emphasis added). Section 24.012 instructs that "[t]his chapter [i.e., TUFTA] shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." TUFTA § 24.012. Taken

together, these provisions direct the court to refer, *inter alia*, to "the principles of law" of insolvency and to apply and construe debt valuation standards of § 24.003(a) and (c) so as to "make uniform the law with respect to the subject of this chapter among states enacting it." *Id.* To accomplish this requirement, the court takes into account existing case law and evaluates how courts have analyzed the statutory interpretation question presented here.[7]

Waller contends that the case law clearly establishes, as a matter of statutory interpretation, that debts are to be taken at book value. The court disagrees. The cases on which Waller principally relies actually support interpreting the statute to allow, in certain contexts, debt values to be adjusted when determining insolvency. Although the Third Circuit in *Trans World Airlines* rejected a proposal to consider the fair market valuation of debt in determining insolvency, it did not do so as a matter of statutory interpretation, as Waller contends. Instead, the court considered context-specific reasons for concluding that the face value of the debt was the proper valuation. While noting that the parties and the lower courts had assumed the issue to be one of

---

[7]In doing so, the court is not restricted to cases that specifically address provisions like § 24.003(a) and (c). The court can also consider interpretations of similarly worded statutes. *See In re Hinsley,* 201 F.3d 638, 643 (5th Cir. 2000) (interpreting provisions of TUFTA by relying on interpretations of similarly worded Bankruptcy Code provisions).

statutory interpretation, the Third Circuit did not ultimately base its decision on this rationale, but instead did so on the ground that the debt should not have been discounted based on creditor perception. *See Trans World Airlines*, 134 F.3d at 196. The appellant had proposed as the fair market valuation the value of the debt discounted by the likelihood that the debtor would be unable to pay its debts in full. After concluding that the debtor was to be treated as a "going concern," the court reasoned that a fair market valuation would improperly devalue the debtor's debt based on the creditor's perception of the debtor's viability. *Id.* at 196-197. The court determined that the valuation of debt must be made from the perspective of the debtor rather than the creditor, and it concluded that, even accepting the position that liabilities must be fairly valued, "*in this context* we do not interpret the term 'fair valuation' to mean fair market valuation. Because our going concern methodology precludes us from devaluing TWA's debt based on creditors' perceptions of TWA's viability, *a fair valuation* of TWA's public debt is the face value of that debt." *Id.* at 197 (emphasis added). The court did not adopt a *per se* rule rejecting the application of a fair valuation standard to debts, but instead simply eschewed the specific valuation that the appellants proposed.

Similarly, the decision in *In re Heilig-Meyers Co.*, 319 B.R. 447 (Bankr. E.D. Va. 2004), which Waller also cites, adopts the

*Trans World Airlines* reasoning, but only to the extent that a debt devaluation arose from creditor fears about the debtor's not honoring its obligations. *See id.* at 466. Critically, in evaluating the liabilities at issue, the court reduced the book value of certain debts to reflect, for example, the finding that one of the debts was "an artificial liability." *Id.* In determining solvency, the court applied a lower-than-book-value valuation for some of the liabilities.[8]

The reasoning adopted by the Seventh Circuit in *In re Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir. 1988), more clearly illustrates that the insolvency calculation does not uniformly mandate that debts be valued at book value. Interpreting the Bankruptcy Code definition of insolvency, the court characterized the proposition that the Code required the book valuation of contingent liabilities as "absurd," because "it would mean that every individual or firm that had contingent liabilities greater than his or its net assets was insolvent—something no one believes." *Id.* at 199. Writing for the panel, Judge Posner explained:

---

[8]*Lids Corp.*, which Waller cites, does appear to rely exclusively on *Trans World Airlines* to hold, as a matter of statutory interpretation, that debts must be valued at book value. *See Lids Corp.*, 281 B.R. at 545-46. For the reasons explained in this memorandum opinion, the court respectfully disagrees with the *In re Lids* court's interpretation of *Trans World Airlines* and with its conclusion regarding the mandatory nature of valuing debts at book value.

> [t]here is a compelling reason not to value
> contingent liabilities on the balance sheet at
> their face amounts, even if that would be
> possible to do because the liability, despite
> being contingent, is for a specified amount
> (that is, even if there is no uncertainty
> about what the firm will owe *if* the
> contingency materializes). By definition, a
> contingent liability is not certain—and often
> is highly unlikely—ever to become an actual
> liability. To value the contingent liability
> it is necessary to discount it by the
> probability that the contingency will occur
> and the liability become real . . . . The
> principle just outlined has long been
> recognized in cases dealing with the question
> whether a firm is insolvent within the meaning
> of the Bankruptcy Code (and this is such a
> case). It makes no difference whether the
> firm has a contingent asset or a contingent
> liability; the asset or liability must be
> reduced to its present, or expected, value
> before a determination can be made whether the
> firm's assets exceed its liabilities.

*Id.* at 200 (citations omitted). Moreover, as *Xonics Photochemical* demonstrates, adjusting a debt value does not run counter to the broad interpretation of the term "debt" as generally applied by the courts. *See, e.g., Commercial Fin. Servs.*, 350 B.R. at 535 (concluding that "a right to payment under an enforceable contract is a debt, even if it is "unliquidated," "contingent," "unmatured," and/or "disputed.").[9] This broad interpretation of debt refers to *the kinds of debts* that are to be considered in a solvency

---

[9]TUFTA in fact codifies this broad definition of debt. TUFTA § 24.002(5) defines "[d]ebt" as a "liability on a claim," and § 24.002(3) defines "[c]laim" as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

analysis, but not to *how the debts are valued*. *Xonics Photochemical* does not propose that contingent liabilities be excluded entirely from the solvency calculus, but rather that their amounts reflect a fair valuation. The court therefore concludes that, although the TUFTA definitions of insolvency at issue here would *permit* debts be valued at book value, they do not *command* that they be valued at book value.

VI

To prevail on his claim, Waller must satisfy his burden of proving that Dobbins Partners was insolvent on December 27, 2002, the date Pidgeon received his final redemption payment. *See Wester v. Strickland*, 87 S.W.2d 765, 767 (Tex. Civ. App. 1935) (holding that plaintiff asserting fraudulent transfer claim has burden of establishing insolvency), *aff'd,* 131 Tex. 23, 112 S.W.2d 1047 (1938); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 25 (Tex. App. 2000, pet. denied) (holding that insolvency is determined as of date of conveyance). Waller bases his entitlement to prevail on his claim solely on his legal interpretation of TUFTA; he does not dispute Pidgeon's factual calculation of the fair value of Dobbins Partners' liabilities. The court need not therefore make a fact finding concerning the valuation of Dobbins Partners' liabilities, regardless of the method that should be

applied under the circumstances of this case.[10] Because the court does not interpret the definition of insolvency under TUFTA to require that debts be valued at book value, it must reject Waller's sole basis for proving that Dobbins Partners was insolvent on the date in question, and it must conclude that he has failed to meet his burden of proving an essential element of his claim under TUFTA § 24.006(a). Because he has failed to prove all the essential elements of his claim, Pidgeon is entitled to judgment dismissing this lawsuit with prejudice.

* * *

Accordingly, for the reasons explained, the court holds that Pidgeon is entitled to judgment dismissing this case with prejudice, because Waller has failed to prove that Dobbins Partners was insolvent when it made the redemption payment of $650,000 to Pidgeon.

June 5, 2008.

*[signature: Sidney A. Fitzwater]*
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[10]For the same reason, the court need not preliminarily determine whether the related-party character of a transaction is a proper basis for devaluing a liability in an insolvency calculation. The parties do not contest this issue in their bench trial stipulations.